Glenn R. Kantor, State Bar No. 122643
 E-mail: gkantor@kantorlaw.net
Timothy J. Rozelle, Esq. State Bar No. 298332
 E-mail: trozelle@kantorlaw.net
KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525 (Tel)
(818) 350 6272 (Fax)

Attorneys for Plaintiff
JOHN DILLON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION (Santa Ana)

| JOHN DILLON, | Case No.: |
|---|---|
| Plaintiff, | **COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC. | |
| Defendants. | |

Plaintiff, JOHN DILLON, herein sets forth the allegations of his Complaint against Defendant KAISER FOUNDATION HEALTH PLAN, INC.

///
///
///
///
///
///
///

**PRELIMINARY ALLEGATIONS**

1. "Jurisdiction" - This action is brought under 29 U.S.C. sections 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. sections 1331 as this action involves a federal question. This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan which is funded by the Defendant. Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs, all as appropriate.

2. Plaintiff was at all relevant times a covered beneficiary under the Kaiser Employee Medical Health Benefit Plan (Identification Number: 94-1340523) (the "Plan"), a self-funded employee welfare benefit plan regulated by ERISA and pursuant to which Plaintiff is entitled to health care benefits.

3. Plaintiff is informed and believes that Kaiser Foundation Health Plan, Inc. ("Kaiser") is a corporation with its principal place of business in the State of California, authorized to transact and transacting business in this judicial district, the Central District of California, and can be found in the Central District of California.

4. Mr. Dillon resides or may be found in this judicial district, the Central District of California. Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA actions).

**GENERAL STATEMENT OF REVLEVANT FACTS**

5. Plaintiff incorporates by reference all paragraphs 1 through 4 as though fully set forth herein.

6. Mr. Dillon is a 59-year-old man, who on September 20, 2013, visited his Kaiser primary care physician to receive treatment for shoulder pain caused by a tennis injury. A blood test was run during the doctor's visit leading to the discovery that Mr. Dillon's liver panel was elevated.

7. On September 24, 2013, a CT scan revealed a low density mass on Mr. Dillon's liver measuring roughly 2.6 cm and suspect for a metastatic lesion.

8. On October 21, 2013, a CT-guided biopsy showed that Mr. Dillon had a liver tumor.

9. Kaiser delayed any further testing on Mr. Dillon's liver resulting in the elevation of Mr. Dillon's bilirubin levels and the onset of severe symptoms emanating from the progression of the disease. Finally, on December 9, 2013, more blood tests were run revealing an abnormal liver panel.

10. From December 9, 2013 through December 17, 2013, Mr. Dillon's condition noticeably deteriorated as he began to experience fatigue, stomach issues and jaundice. Mr. Dillon was, in fact, admitted to a Kaiser's Irvine Medical Center on December 18, 2013, and discharged on the same day.

11. On December 19, 2013, Kaiser's Dr. Karl Esrason indicated after examination of Mr. Dillon and his charts that he did not qualify for a liver transplant or other clinical protocols.

12. By December 25, 2013, Mr. Dillon's bilirubin levels had increased by 60%. Despite the unequivocal medical tests demonstrating a general decline in his health, Kaiser continued in its failure to proactively determine the source of Mr. Dillon's symptoms.

13. On December 26, 2013, Mr. Dillon was admitted to the Kaiser Medical Center in Irvine where an endoscopic retrograde cholangiopancreatography (ERCP) procedure was performed. The ERCP procedure was performed without any consultation with a specialized cancer treatment center recognized by the National

Cancer Institute Cancer Center Programs. Mr. Dillon experienced many problems after the performance of this procedure.

14. On December 29, 2013, a drain was placed in Mr. Dillon's right side, resulting in the hitting of a vein causing him to bleed heavily and to be moved to the intensive care unit.

15. On January 5, 2014, Mr. Dillon was released from the Kaiser Medical Center in Irvine.

16. On January 9, 2014, Mr. Dillon was re-admitted to the Irvine Kaiser Hospital via the emergency room. He remained inpatient through January 12, 2014.

17. On January 13, 2014, Mr. Dillon met with Dr. Louis A. DiFronzo at the Kaiser medical facility in Los Angeles for a surgical consultation. Dr. DiFronzo stated that he would not proceed with a surgery until Mr. Dillon's bilirubin level was at Level 2.

18. Following his visit with Dr. DiFronzo, Mr. Dillon underwent two drainages under Kaiser's treatment plan both resulting in prolonged and agonizing complications. Mr. Dillon went to the emergency room, again, for dehydration, nausea and side effects associated with the medication he had been prescribed by Kaiser's physicians.

19. On February 5, 2014, Kaiser continued with the drainage process as the drains were replaced and readjusted at the Kaiser Los Angeles Medical Center.

20. On February 19, 2014, per the terms of his Plan regarding receipt of a second medical opinion outside of Kaiser's Exclusive Provider Organization (EPO), Mr. Dillon requested a referral to receive a consultation at the USC Medical Center Surgical Oncology Department.

21. On February 22, 2014, Kaiser sent Mr. Dillon a Pre-Service Claim Denial Notice on the grounds that Kaiser's Expedited Review Committee provided appropriate care for Mr. Dillon and would provide him with appropriate treatment in the future. *See* Exhibit A attached.

22. On February 24, 2014, Mr. Dillon again visited Dr. DiFronzo. Dr. DiFronzo again informed Mr. Dillon that he would not perform surgery until bilirubin levels reached Level 2. Furthermore, Dr. DiFronzo inexplicably introduced an added surgery prerequisite in the performing of a portal vein embolization (PVE) procedure. Mr. Dillon left Dr. DiFronzo's office with no surgery date and the continuation of ineffective treatment measures.

23. On February 27, 2014, Mr. Dillon was again admitted to the Kaiser Medical Center in Irvine. He had a fever and needed treatment for what was perceived as a likely infection. An MRI was conducted on March 1, 2014, revealing that his tumor had increased in size, and was now 3.9 cm. At this point almost six months had elapsed since the initial diagnosis of the tumor, resulting in a tumor size increase of 1.3 cm. Ignoring all medical evidence which incontrovertibly pointed towards a continual decline in his medical condition, Dr. DiFronzo rescheduled Mr. Dillon's March 5, 2014 appointment for March 19, 2014, yet another delay in Mr. Dillon's treatment.

24. At this point, Mr. Dillon, desperate for a clear and effective treatment plan sought a second medical opinion from Dr. Yuri Genyk, an Assistant Professor of Surgery, Division of Hepatobiliary Surgery and Abdominal Organ Transplantation at the USC Keck School of Medicine.

25. On March 7, 2014, Mr. Dillon received a second medical opinion from Dr. Yuri Genyk at USC. Mr. Dillon had no viable option other than to obtain a second medical opinion outside of Kaiser's EPO, based on two facts: (1) that nearly six months had elapsed since initial diagnosis of the hilar cholangiocarcinoma, with no effective treatment plan in place; and (2) that Mr. Dillon sought specialized treatment (which was in accord with generally accepted professional standards of practice and consistent with a standard of care in the medical community) to treat his medical condition and effectively unavailable through Kaiser's EPO network.

26. Dr. Genyk's Consultation Notes, which were sent to Dr. DiFronzo for review, clearly indicate that Mr. Dillon was qualified for liver resection and was additionally a good candidate for surgery. Dr. Genyk additionally commented on Dr. DiFronzo's suggested course of treatment which inexplicably included a PVE procedure. Dr. Genyk stated:

> It was unclear why the right portal vein is to be embolized when the right posterior segment has the best chance of obtaining negative margins and the pedicle to the right posterior segment appears to be the most distant from the tumor and the caliber of the bile duct is the smallest indicating the right posterior segment appears to be the most distant from the tumor and the caliber of the bile duct is the smallest indicating the right posterior segment of the liver is probably the most adequate segment to preserve.

Dr. Genyk noted, as well, that PVE would potentially allow the tumor to grow in size and actually stimulate tumor growth.

27. On March 10, 2014, Mr. Dillon submitted an Urgent Care Claim for expedited review to Kaiser after consultation with Dr. Genyk. *See* Exhibit B.

28. On March 12, 2014, Kaiser issued another Pre-Service Claim Denial Notice for Mr. Dillon's request for coverage of liver resection surgery, which was recommended as a medically necessary treatment for Mr. Dillon by Dr. Genyk. Kaiser cited the following provision in its SPD for the denial:

> "Upon request and subject to payment of any applicable Copayments or Coinsurance, you may obtain a second opinion from an EPO Physician about any proposed Covered Services. If the Plan determines that there isn't an EPO Physician who is an appropriately qualified medical professional for your condition, the Plan will refer you to a Non-EPO."

Kaiser stated its position that Kaiser "does have appropriately qualified medical professionals within the Kaiser Permanente Medical Group to treat Mr. Dillon's condition." *See* Exhibit C.

29. By March 17, 2014, Mr. Dillon's tumor had grown to 5.1 cm. Mr. Dillon was presented with the option of continuing with an ineffective PVE procedure under Dr. DiFronzo or seeking life-saving surgical treatment from Dr. Genyk.

30. On April 9, 2014, Mr. Dillon underwent liver resection surgery at USC. Mr. Dillon paid all expenses for the procedure at USC out of pocket in a successful effort to save his own life and garner the best possible long-term prognosis.

31. On September 5, 2014, Mr. Dillon submitted post-service claims for the $77,706.87 in charges he paid for his (1) out-of-Plan consultation and (2) liver resection surgery performed by Dr. Yuri Genyk at the USC Medical Center.

32. On October 15, 2014, Kaiser denied Mr. Dillon's post-service claims on the grounds that "it was determined that the appropriate care was available in-Plan for treatment of Mr. Dillon's choloangiocarcinoma. Since he still pursued out-of-Plan services, even after his referral had been denied, Mr. Dillon is solely responsible for the charges that he incurred." *See* Exhibit D.

33. On October 28, 2014 and December 2, 2014, Mr. Dillon submitted to Kaiser an appeal (and amended appeal) of its post-service claims denials.

34. On December 11, 2014, Kaiser acknowledged receipt of the appeal and informed Mr. Dillon that they were conducting a thorough review of his appeal. *See* Exhibit E.

35. On December 24, 2014, Kaiser again acknowledged receipt of Mr. Dillon's appeal and informed Mr. Dillon that they were conducting a review of his appeal. *See* Exhibit F.

36. On March 20, 2015, Mr. Dillon requested that Kaiser complete its review of his appeal.

37. On April 1, 2015, Kaiser sent Mr. Dillon a letter which included two very conflicting statements:

(a) "This letter is to advise that your request for review of the Post-Service Denial for the above referenced dates of service [March 7, 2014 Consultation with Dr. Genyk and April 9, 2014 liver resection surgery performed by Dr. Genyk], as well as the request for out of network approvals for surgical oncology consultation and out of network treatment, which you received from Kaiser Permanente has been concluded."

(b) " . . . Please be advised that we show no claims received for dates of service 03/07/14 and 04/09/14. In order to consider claims for these dates of service, they must be submitted to the address on your ID card along with medical records supporting both services for review." *See* Exhibit G.

38. Kaiser's April 1, 2015 letter seemingly ignores the claims which it denied on October 15, 2014 and which it claimed to be reviewing on an appeal basis since December 2, 2014. Mr. Dillon complied with all facets of the appeals procedures outlined in the terms of his Plan and had received prior notice from Kaiser that his appeal was being reviewed. As such, Kaiser's April 1, 2015 letter forced Mr. Dillon to deem as denied his post-service claims and initiate this action to enforce his rights under the Plan.

39. Since Defendant failed to make a decision on Plaintiff's appeal within the time required, Plaintiff's claims are "deemed exhausted" and he may file an action in federal court under 29 U.S.C. § 1132(a)(1)(B).

## FIRST CAUSE OF ACTION
## FOR DENIAL OF PLAN BENEFITS UNDER ERISA

40. Plaintiff refers to and incorporates by reference paragraphs 1 through 39, as though fully set forth herein.

41. At all times relevant, Plaintiff was covered under the Kaiser Employee Medical Health Benefit Plan.

42. Plaintiff's out-of-network treatment was medically necessary, according to the terms of his Plan and Kaiser refused to allow Mr. Dillon to seek consultation and treatment outside of its EPO in direct violation of its own plan provisions outlining referral services.

43. Defendant wrongfully denied Plaintiff's claims for out-of-network surgical consultation and liver resection surgery in the following respects:

(a) Wrongfully concluding that Mr. Dillon could not seek non-EPO services to receive medically necessary liver resection surgery, which ultimately saved his life;

(b) Failure to consult with a health care professional, Dr. Yuri Genyk or a specialized cancer treatment center, who has appropriate training and experience in the field of medicine involved in the medical judgment and was also an individual not already consulted in connection with the adverse benefit determination that was the subject of the appeal;

(c) Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the plan documents, in relation to the applicable facts and plan provisions, for the denial of Plaintiff s request;

(d) After Plaintiff's claims were denied in whole or in part, failure to adequately describe to Plaintiff any additional material or information necessary for Plaintiff to perfect his claim along with an explanation of why such material is or was necessary;

(e) Failure to properly and adequately investigate the merits of Plaintiff's request and/or consider the information provided by Plaintiff; and

(f) Failure to consider the overwhelming medical evidence which showed the requested treatment was medically necessary and required to save Mr. Dillon's life.

44.  Plaintiff is informed and believes and thereon alleges that Defendant wrongfully denied the claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and which Plaintiff will immediately make Defendant aware of once said acts or omissions are discovered by Plaintiff.

45.  Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all duties and obligations on his part to be performed.

46.  As a proximate result of the denial of health insurance benefits due Plaintiff, Plaintiff has been damaged in the amount of the medical bills incurred, in a total sum to be proven at the time of trial.

47.  As a further direct and proximate result of this improper determination regarding the medical claims, Plaintiff, in pursuing this action, has been required to incur attorneys' costs and fees.  Pursuant to 29 U.S.C § 1132(g)(1), Plaintiff is entitled to have such fees and costs paid by Defendant.

48.  Due to the wrongful conduct of Defendant, Plaintiff is entitled to enforce his rights under the terms of the Plan and to clarify his rights to future benefits under the terms of the Plan.

## SECOND CAUSE OF ACTION AGAINST
## FOR EQUITABLE RELIEF

49.  Plaintiff refers to and incorporates by reference paragraphs 1 through 48, as though fully set forth herein.

50.  As a direct and proximate result of the failure of the Defendant to pay claims for medical benefits, and the resulting injuries and damages sustained by Plaintiff as alleged herein, Plaintiff is entitled to and hereby requests that this Court grant Plaintiff the following relief pursuant to 29 U.S.C. § 1132(a)(1)(B):

(a) Restitution of all past benefits due to Plaintiff, plus prejudgment and post-judgment interest at the lawful rate; and

(b) Such other and further relief as the Court deems necessary and proper to protect the interests of Plaintiff under the Plan.

### REQUEST FOR RELIEF

Wherefore, Plaintiff prays for judgment against Defendant as follows:

1. Payment of health benefits due to Plaintiff under the Plan;

2. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action;

3. Payment of prejudgment and post-judgment interest as allowed for under ERISA; and

4. For such other and further relief as the Court deems just and proper.

DATED: April 30, 2015    KANTOR & KANTOR, LLP

By: */s/ Glenn R. Kantor*
  Glenn R. Kantor
  Timothy J. Rozelle
  Attorneys for Plaintiff
  JOHN DILLON

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525